UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

JOHN L. WATERS, ON BEHALF OF )
HIMSELF AND ALL OTHERS )
SIMILARLY SITUATED, )
                )
        Plaintiff, )
                )     Civil Action No. 08-11795-NG
v. )
                )
J.C. CHRISTENSEN & )
ASSOCIATES, INC., )
                )
        Defendant. )

_____

**REPORT AND RECOMMENDATION ON PARTIES' CROSS-MOTIONS
FOR PARTIAL SUMMARY JUDGMENT AND ORDER ON MOTION
TO STRIKE PORTIONS OF PLAINTIFF'S AFFIDAVIT IN SUPPORT
OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

March 4, 2011

Boal, M.J.

      Plaintiff John L. Waters ("Waters" or "Plaintiff") alleges in this action that defendant J.C.

Christensen & Associates, Inc. ("JCC" or "Defendant") violated the Fair Debt Collection

Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") and the Massachusetts Consumer

Protection Act, M.G.L. c. 93A ("Chapter 93A"), in attempting to collect an alleged credit card

debt.  This matter is before the Court on the Defendant's motion to strike paragraph 9 of the

Plaintiff's affidavit and the parties' cross-motions for partial summary judgment.  For the

following reasons, this Court DENIES the Defendant's motion to strike paragraph 9 of the

Plaintiff's affidavit.  In addition, this Court recommends to the District Judge to whom this case

is assigned that the Plaintiff's motion for summary judgment be DENIED, the Defendant's

motion for summary judgment be ALLOWED, and that the District Court enter summary

judgment in favor of Defendant and against the Plaintiff.

PROCEDURAL BACKGROUND

On October 27, 2008, Plaintiff filed the Complaint in this action.  (Docket No. 1).  Based

on the collection letters sent to the Plaintiff, the Complaint alleged that the Defendant violated

the FDCPA and Chapter 93A in attempting to collect an alleged credit card debt.  (Docket No.

1).  Plaintiff sought statutory damages and injunctive relief on behalf of himself and a class of

similarly situated Massachusetts consumers.  (Id.).

On July 8, 2009, Plaintiff amended his Complaint to revise the class definitions set forth

in the original Complaint and to assert an additional claim under the FDCPA.  (Docket No. 17).

Plaintiff filed a Second Amended Complaint on August 17, 2009, which added a claim under

Chapter 93A that was not ripe at the time of the filing of the First Amended Complaint.  (Docket

No. 21).  At that time, the Second Amended Complaint contained ten counts.  (Id.).  On February

5, 2010, Plaintiff filed an assented-to motion to dismiss Counts I and II of the Second Amended

Complaint (Docket No. 32), which the District Court granted.

On January 29, 2010, the Plaintiff filed the instant motion for partial summary judgment[1]

on Counts III through X of the Second Amended Complaint.  (Docket No. 25).  Defendant

opposed the Plaintiff's motion and cross-moved for partial summary judgment on February 26,

2010.  (Docket Nos. 36-39).  Defendant also moved to strike paragraph 9 of the Plaintiff's

---

[1] Although the Plaintiff's motion was styled as a motion for partial summary judgment, this Court's decision disposes of all of Plaintiff's remaining claims.  At the hearing, the Plaintiff explained that he styled it as a motion for partial summary judgment because, if summary judgment is entered in his favor, issues regarding damages and class certification would remain.

affidavit in support of his motion for summary judgment. (Docket No. 35). Plaintiff filed its opposition to Defendant's cross-motion for summary judgment and motion to strike on March 24, 2010. (Docket Nos. 41-44). On March 1, 2011, the parties filed a stipulation of dismissal with prejudice as to Counts IV and VII of the Second Amended Complaint. (Docket No. 49).

Judge Nancy Gertner referred this matter to this Court for a report and recommendation on the parties' cross-motions for partial summary judgment and for a ruling on the Defendant's motion to strike. (Docket No. 47). The Court heard oral argument on March 2, 2011.

<u>STATEMENT OF FACTS</u>[2]

On or about November 9, 2007, Resurgent Capital Services ("Resurgent"), a collection agency, placed a delinquent account of the Plaintiff with JCC for collection. (Def. St. ¶ 1).[3] JCC is licensed as a "debt collector" by the Massachusetts Division of Banks and is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and 209 C.M.R. 18.02. (Pl. St. ¶ 1).[4] JCC was hired to collect a debt arising from the Plaintiff's use of a Sears credit card account (the "Account"). (Def. St. ¶ 2). Although Plaintiff cannot remember what he purchased with the Account, he has never owned or operated a business, so it is not possible that he used the Account for commercial purposes.[5] (Waters Aff. ¶ 9).[6]

---

[2] The facts are taken from each of the parties' statements of undisputed facts, filed pursuant to Local Rule 56.1. The parties have largely admitted each other's statements. See Docket Nos. 39 and 43. The facts are undisputed unless otherwise noted.

[3] "Def. St. __" refers to the Defendant's Concise Statement of Material Facts (Docket No. 38).

[4] "Pl. St. __" refers to the Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (Docket No. 26).

[5] Defendant disputes this fact on the grounds that the paragraph of Waters' affidavit supporting this fact should be stricken from the summary judgment record. (Docket No. 39 at ¶

As of November 9, 2007, LVNV Funding, LLC ("LVNV") owned the Account and Resurgent acted as the servicer of the Account.[7]  (Pl. St. ¶ 4; Def. St. ¶ 19 and Exhibit J thereto). On May 7, 2006, Capital Management Services sent a letter to the Plaintiff identifying LVNV as the creditor.[8]  (Def. St. ¶ 19 and Exhibit J attached thereto).  The letter also identified Sears as the original creditor.  (Exhibit J to Def. St.).

Resurgent had designated the Account as a pre-legal account, meaning that Resurgent intended to pursue the Account legally if it remained unpaid.  (Def. St. ¶ 3).  As a pre-legal account, Resurgent both reviewed the Account to be forwarded to an attorney, and had retained counsel in Massachusetts prior to its placement with JCC.  (Def. St. ¶ 4).

Pursuant to the contract between Resurgent and JCC, Resurgent reserved the right to recall the accounts it placed with JCC.  (Def. St. ¶ 5).  Once recalled by Resurgent, the accounts would be forwarded to an attorney.  (Def. St. ¶ 6).  JCC was informed that every account Resurgent recalled from JCC was in fact placed with an attorney for collection.  (Def. St. ¶ 7).

On or around November 9, 2007, JCC mailed Plaintiff a collection letter (the "First

---

10).  As set forth in detail below, the Court denies the Defendant's motion to strike and, accordingly, considers this fact in deciding the parties' cross-motions for summary judgment.

[6] "Waters. Aff. __" refers to the Affidavit of John L. Waters in Support of Motion for Partial Summary Judgment (Docket No. 29).

[7] Since 2003, the following agencies have also sought collection of the Account: (1) CCB Credit Services, (2) NAFS, (3) TSYS Total Debt Management, (4) Redline Recovery Services, (5) Financial Recovery Services, (6) Capital Management Services, and (7) Northland Group. (Def. St. ¶ 18).

[8] While in his response to Defendant's statement of facts submitted under Local Rule 56.1 Plaintiff states that this fact is "disputed as to content, materiality, and relevance," at oral argument the Plaintiff clarified that he does not dispute the fact but disputes only that this fact is material.

-4-

Letter"). (Pl. St. ¶ 2; Def. St. ¶8). The First Letter stated, in relevant part:

<u>NOTICE OF LEGAL REVIEW AND SETTLEMENT OPTION</u>

Dear John L Waters,

Our client, RESURGENT CAPITAL SERVICES, has contracted our services to represent them with regard to the Sears account which they now own. RESURGENT CAPITAL SERVICES has prescreened and reviewed your account to be forwarded to an Attorney's office and our client has legal representation in Massachusetts.

Our client has given us authorization to negotiate GENEROUS SETTLEMENT TERMS on their behalf. Please review the following settlement opportunities to make voluntary resolution of your account a reality:

\*\*\*

Take advantage of this opportunity to settle your account and as long as you maintain your payment arrangement, suspend forwarding this account to an Attorney. . . . For accounting purposes, your first payment toward the settlement must be received within 40 calendar days after the date on this letter. If you wish to make a payment proposal after that time, please call us to discuss it. ...

(Exhibit A to Second Amended Complaint). If payment were made on the Account, it would suspend the Account from being recalled by Resurgent to be forwarded to an attorney. (Def. St. ¶ 9). If the Account remained unsettled, it could be recalled by Resurgent and forwarded to an attorney. (<u>Id.</u>). Although Plaintiff received and read the First Letter, he did not contact anyone at JCC or take any other action. (Pl. St. ¶ 3; Def. St. ¶ 10).

Plaintiff received a second letter from Defendant dated December 25, 2007 (the "Second Letter"). (Pl. St. ¶ 5; Def. St. ¶ 11). The Second Letter stated, in relevant part:

<u>NOTICE OF INTENT TO SETTLE</u>

Dear John L Waters,

Our client, RESURGENT CAPITAL SERVICES, has contracted our services to represent them with regard to the Sears account which they now own. We have

been unable to work out an agreement with you to resolve this situation.  THIS
ACCOUNT WILL BE FORWARDED TO AN ATTORNEY in Massachusetts if
you do not contact us to resolve this account.

. . . our client is willing to offer you SUBSTANTIAL SAVINGS and FLEXIBLE
SETTLEMENT TERMS to attempt to help you voluntarily resolve your account.

***

Take advantage of this opportunity to settle your account and as long as you
maintain your payment arrangement, suspend forwarding this account to an
Attorney. . . .  For accounting purposes, your first payment toward the settlement
must be received within 30 calendar days after the date on this letter.  If you wish
to make a payment proposal after that time, please call us to discuss it. . . .

(Exhibit B to Second Amended Complaint).  Although Plaintiff received and read the Second

Letter, he did not contact JCC or take any other action with respect to the letter.  (Pl. St. ¶ 6; Def.

St. ¶ 12).

On February 7, 2008, JCC sent another collection letter to Plaintiff (the "Third Letter").

(Pl. St. ¶ 6; Def. St. ¶ 13).  The Third Letter stated, in relevant part:

<u>FINAL NOTICE OF LEGAL REVIEW</u>
Dear John L Waters,

Our client, RESURGENT CAPITAL SERVICES, has contracted our services to
represent them with regard to the Sears account which they now own.  We have
been unable to work out an agreement with you to resolve this situation.
RESURGENT CAPITAL SERVICES has advised us that THIS ACCOUNT
WILL BE FORWARDED TO AN ATTORNEY in the state of Massachusetts if
you do not contact us to resolve this account.

If you are unable to pay your account in full, our client is willing to offer you
SUBSTANTIAL SAVINGS AND FLEXIBLE SETTLEMENT TERMS to
attempt to help you voluntarily resolve your account. . . .

Take advantage of this opportunity to settle your account and as long as you
maintain your payment arrangement, suspend forwarding this account to an
Attorney. . . . For accounting purposes, your first payment toward the settlement
must be received within 30 calendar days after the date on this letter.  If you wish
to make a payment proposal after that time, please call us to discuss it.

-6-

(Exhibit C to Second Amended Complaint).  Again, Plaintiff did not contact JCC regarding the Third Letter or take any other action in response.  (Pl. St. ¶ 8; Def. St. ¶ 13).

On or around March 11, 2008, Resurgent recalled the Account from JCC.  (Def. St. ¶ 14). Approximately four minutes after the Account was recalled from JCC, it was placed with the Daniels Law Office for collection.  (Def. St. ¶ 15).

<u>ANALYSIS</u>

Plaintiff has moved for summary judgment on all remaining counts of the Second Amended Complaint.[9]  Plaintiff claims that JCC's First and Second Letters violate both the FDCPA and Chapter 93A by stating that Plaintiff had only a number of days to resolve the matter prior to the Account being placed with an attorney for collection, when JCC actually intended to and in fact did give him more time.[10]  (Pl. Br. at 6-8).[11]  Second, Plaintiff argues that JCC failed to accurately identify the Plaintiff's current creditor in its Letters to him.  (Pl. Br. at 16-23).

JCC has cross-moved for summary judgment, arguing that its Letters to Plaintiff do not violate the FDCPA or Chapter 93A because they were truthful in all respects and did not create a false sense of urgency.  (Def. Br. at 5-10).[12]  JCC contends that although it provided the Plaintiff

_____

[9] Plaintiff originally moved for summary judgment on Counts III through X of the Second Amended Complaint.  However, the parties have stipulated to the dismissal with prejudice of Counts IV and VII of the Second Amended Complaint.  (Docket No. 49).

[10] Plaintiff does not allege that the Third Letter violates the FDCPA or Chapter 93A.

[11] "Pl. Br. __" refers to the Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (Docket No. 27).

[12] "Def. Br. __" refers to the Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment and Memorandum of Law in Support of its Cross Motion for Summary Judgment (Docket No. 37).

with more time to settle the debt beyond the time stated in the First and Second Letters, such an

act cannot serve as the basis for liability under the FDCPA.  (Def. Br. at 11-12).  JCC also argues

that its failure to include the current creditor in its Letters to the Plaintiff does not violate the

FDCPA because the requirements set forth in Section 1692g do not apply to JCC, a subsequent

debt collector.  (Def. Br. at 15-20).  In addition, JCC argues that Plaintiff has failed to prove a

necessary element of his claim under the FDCPA, namely, that the debt giving rise to the cause

of action is a "consumer" debt.  At a minimum, whether the debt is a consumer debt is an issue

of fact that cannot be decided on summary judgment.  (Def. Br. at 24-26).  Finally, JCC argues

the Plaintiff has not suffered an injury which would otherwise entitle him to seek recovery under

Chapter 93A.  (Def. Br. at 22-24).

　　　　For the following reasons, this Court finds that JCC is entitled to judgment as a matter of

law because the Letters do not violate the FDCPA or Chapter 93A, and the Plaintiff has failed to

prove an injury under Chapter 93A.

I.　　Standard Of Review

　　　　Summary judgment is appropriate when the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).[13]  "A 'genuine' issue is one that could be resolved in favor of either party, and a

'material fact' is one that has the potential of affecting the outcome of the case."  Dennis v.

Osram Sylvania, Inc., 549 F.3d 851, 855 (1st Cir. 2008) (quoting Calero-Cerezo v. U.S. Dep't. of

Justice, 355 F.3d 6, 19 (1st Cir. 2004)).

---

　　　　[13] Rule 56 has been amended effective December 1, 2010.  The substantive standard for
summary judgment remains unchanged.  See Fed. R. Civ. P. 56 Advisory Committee's Note.

The Court "must scrutinize the evidence in the light most agreeable to the nonmovants, who are entitled to the benefit of all reasonable inferences therefrom." <u>Ahern v. Shinseki</u>, 629 F.3d 49, 53-54 (1st Cir. 2010) (citing <u>Cox v. Hainey</u>, 391 F.3d 25, 29 (1st Cir. 2004)). "A properly supported summary judgment motion cannot be defeated by relying upon conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." <u>Id.</u> (citations omitted).

"Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*." <u>Wightman v. Springfield Terminal Ry. Co.</u>, 100 F.3d 228, 230 (1st Cir. 1996) (internal citations omitted). "Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." <u>Id.</u> "Where, as here, a district court rules simultaneously on cross-motions for summary judgment, it must view each motion, separately, through this prism." <u>Estate of Hevia v. Portrio Corp.</u>, 602 F.3d 34, 40 (1st Cir. 2010) (citing <u>Blackie v. Maine</u>, 75 F.3d 716, 721 (1st Cir. 1996) ("Barring special circumstances, the nisi prius court must consider each motion separately, drawing inferences against each movant in turn.")).

II.   <u>Evidentiary Issues</u>

In order to determine precisely which materials are properly before the Court for purposes of deciding the cross-motions for summary judgment, this Court must first decide the Defendant's motion to strike paragraph 9 of the January 28, 2010 affidavit of the Plaintiff in support of his motion for summary judgment (the "Waters Affidavit"). Affidavits in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."

Fed. R. Civ. P. 56(c)(4).  Inadmissible evidence may not be considered.  See Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993).  JCC argues that paragraph 9 of the Waters Affidavit must be stricken from the record because it contradicts the Plaintiff's deposition testimony.  (JCC's Motion to Strike at 5).  This Court disagrees.

"When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Galcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994) (citations omitted). "The purpose of this sham affidavit rule is to protect the procedural integrity of summary judgment." Mahan v. Boston Water & Sewer Comm'n, 179 F.R.D. 49, 53 (D. Mass. 1998).  "If a party simply could offer a contradictory, post-deposition affidavit to defeat summary judgment without providing a 'satisfactory explanation' for the contradiction, the purpose of summary judgment would be defeated." Id. (citing Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2nd Cir. 1969)).

However, "[a] subsequent affidavit that merely explains, or amplifies upon, opaque testimony given in a previous deposition is entitled to consideration in opposition to a motion for summary judgment." Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 26 (1st Cir. 2002). As explained below, the Court finds that the Waters Affidavit does not contradict the Plaintiff's deposition testimony but simply explains and expands on his prior testimony.

At his deposition, the Plaintiff testified that he could not recall what he purchased with the credit card account at issue in this case.  Specifically, Plaintiff testified as follows:

Q:      Okay.  Do you remember what sort of purchases you used the card for?

A:      No.

Q:      Were they business-related purchases?

A:      I don't recall.  I would say no.

Q:      Were they household-related purchases?

A:      Yes, I would assume so.

Q:      You would assume so or you know so?

A:      I can't recall 100 percent.

                              ***

Q:      Do you remember what sort of purchases you made with this card?

A:      No.

                              ***

Q:      And you don't know what you used it for?

                              ***

A:      I don't recall.

Waters Deposition, p. 10:1-11, 11:9-11, 17:12-20 (attached as Exhibit E to Def. St.).  Subsequent

to his deposition, Plaintiff submitted an affidavit in support of his motion for partial summary

judgment.  Paragraph 9 of the Waters Affidavit states:

> At some time prior to 2007 I had a credit card account with Sears on which I
> defaulted.  To the best of my knowledge, this is the account which was the subject
> of defendant's letters.[14]  My recollection is that I used the Sears account to make

---

[14] JCC also argues that this sentence should be struck because of the use of the phrase "to
the best of my knowledge."  Indeed, on March 2, 2011, JCC filed supplemental authority to
show that such language was insufficient as a matter of law to demonstrate that the affidavit was
based on personal knowledge.  (Docket No. 51).  While Defendant may be correct with respect
to this sentence, the sentence only sets out to establish that the Account belonged to Sears, which

miscellaneous purchases for my personal use.  I have never owned or operated a business, so it is not possible that the account was used at all for commercial purposes.

Waters Affidavit at ¶ 9.

Waters testified that he could not remember what purchases he made with the credit card at issue.  Therefore, his deposition testimony is, at best, inconclusive as to whether the debt was incurred primarily for personal, family or household purposes.  The Waters Affidavit is not clearly contradictory to Plaintiff's deposition testimony.  The Waters Affidavit simply explains that Plaintiff has never owned or operated a business so it is not possible that he used the credit card for commercial purchases.  Therefore, the Court will not strike paragraph 9 of the Waters Affidavit.

III.    FDCPA Claims

    A.    The FDCPA

Congress passed the FDCPA to combat the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors . . . [that] contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a); see Chiang v. Verizon New England Inc., 595 F.3d 26, 41 (1st Cir. 2010). The FDCPA prohibits various practices by debt collectors including, but not limited to, harassment and abuse, unfair practices, false or misleading representations, and attempting communication with debtors at improper or inconvenient times.  15 U.S.C. §§ 1692a-1692j.

The FDCPA "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices."  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, — US —, 130

_____

is not germane to Plaintiff's burden of proof.

S.Ct. 1605, 1608 (2010).  "The FDCPA is not intended to stifle all debt collection practices."

Poulin v. Thomas Agency, No. 09-cv-575-GZS, 2011 WL 159889, at *6 (D. Me. Jan. 13, 2011)

(citation omitted).  Rather, "[t]he FDCPA was enacted to protect debtors from *abusive* debt

collection practices."  Chiang, 595 F.3d at 41 (emphasis added).  "To that end, it regulates debt

collectors' tactics and, inter alia, creates a private cause of action for victims of 'oppressive or

offensive collection agency behavior.'"  Id. (citation omitted).

The FDCPA imposes strict liability on debt collectors for their violations.  Harrington v.

CACV of Colorado, LLC, 508 F. Supp. 2d 128, 132 (D. Mass. 2007) (Gertner, J.) (citations

omitted).  A plaintiff need not show intentional conduct by the collector or actual damages.  Id.

(citation omitted).  A plaintiff need only show a violation of one of the FDCPA's provisions in

order to make out a prima facie case.  Id.  In order to prevail on a FDCPA claim, a plaintiff must

prove that (1) he was the object of collection activity arising from consumer debt, (2) the

defendant is a debt collector within the meaning of the statute, and (3) the defendant engaged in

a prohibited act or omission under the FDCPA.  Krasnor v. Spaulding Law Office, 675 F. Supp.

2d 208, 211 (D. Mass. 2009) (Neiman, M. J.) (citation omitted).

However, a debt collector may escape liability if it can demonstrate by a preponderance

of the evidence that its "violation [of the FDCPA] was not intentional and resulted from a bona

fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such

error."  15 U.S.C. § 1692k(c); see also Russell v. Equifax A.R.S., 74 F.3d 30, 33-34 (2nd Cir.

1996).

In this case, the parties do not dispute that the Defendant is a debt collector within the

meaning of the statute.  (Pl. St. ¶ 1; Def. Response ¶ 1).[15]  Accordingly, the Court need only

decide whether the Plaintiff has been the object of collection activity arising from a consumer

debt and whether the Defendant engaged in a prohibited act or omission under the FDCPA.

> 1.     Whether The Plaintiff Has Established A Consumer
>        Debt Is A Question Of Fact That The Court Need Not Decide

In order to make a claim under the FDCPA, the Plaintiff bears the burden of proving that

he has been the object of collection activity arising out of a consumer debt.  15 U.S.C. §

1692a(5); see Garcia v. LVNV Funding, LLC, No. 08-CA-514-LY, 2009 WL 3079962, at *5

(W.D. Tex. 2009).  The Defendant argues that the Plaintiff has not established that his debt was a

consumer debt covered by the FDCPA because the Plaintiff cannot remember what purchases he

made with the Account.  (Def. Br. at 25-26).  Plaintiff argues that he has stated that he used the

Account to make miscellaneous purchases for his personal use and that he never owned or

operated a business so it is not possible that the account was used at all for commercial purposes

and, in any event, the Defendant has admitted that the debt was consumer in nature.  (Pl. Reply

at 11-12).[16]  Accordingly, whether the Plaintiff has established that the debt is consumer in

nature is an issue of fact that cannot be decided in the context of cross-motions for summary

judgment.  Nevertheless, because the Court finds that the Letters do not violate the FDCPA as a

matter of law, it is unnecessary to determine whether the Plaintiff has established the existence

of a consumer debt.

---

[15] "Def. Response __" refers to the Defendant's Response to Plaintiff's Concise
Statement of Material Facts (Docket No. 39).

[16] "Pl. Reply __" refers to the Opposition to Defendant's Cross-Motion for Summary
Judgment and Plaintiff's Reply Memorandum of Law in Support of His Motion for Partial
Summary Judgment (Docket No. 41).

2.        The Defendant's Letters Did Not Violate Section 1692e(10) Of The FDCPA

Plaintiff argues that the Defendant's First and Second Letters violated as a matter of law

the FDCPA's prohibition on false representations or deceptive means to, inter alia, collect a debt.

See 15 U.S.C. § 1692e(10).  According to the Plaintiff, the clear import of both Letters was that

unless the Plaintiff settled the Account within a certain period of time, the Account would be

forwarded to a Massachusetts attorney for collection.  (Pl. Br. at 6-8).  Because the Plaintiff did

not settle the account within the stated timeframe and the Accounts were not forwarded to an

attorney, the Letters were deceptive and misleading.  (Id.).  This Court disagrees.

Section 1692e(10) of the FDCPA prohibits "[t]he use of any false representation or

deceptive means to collect or attempt to collect any debt or to obtain information concerning a

consumer."  15 U.S.C. § 1692e(10).  "Most circuits have applied a 'least sophisticated

consumer' standard in assessing whether a debt collector's communication is deceptive or

misleading."  Sullivan v. Credit Control Servs, Inc., — F. Supp. 2d —, 2010 WL 4183801, at * 3

(D. Mass. 2010) (Saylor, J.) (citations omitted).  The least sophisticated consumer standard:

> is an objective standard, based on "whether the 'least sophisticated consumer'
> would be deceived by the collection practice." The standard is intended to
> vindicate the statutory purpose of protecting vulnerable consumers from
> deceptive or misleading collection tactics.
>
> As the Seventh Circuit has observed, in practice courts do not literally apply the
> "least sophisticated consumer" standard.  To eliminate the "incongruity" between
> what the standard literally demands and the way it is interpreted in practice, the
> Seventh Circuit has adopted a different formulation that looks to whether "an
> unsophisticated consumer"  would be deceived or misled by the communication.
> Under the "unsophisticated consumer" standard, "statements are not misleading
> unless a significant fraction of the population would be similarly misled."

Sullivan, 2010 WL 4183801 at *3 (internal citations omitted).

The First Circuit has not explicitly adopted the "least sophisticated consumer" or the

-15-

"unsophisticated consumer" standard.  In any event, the standard is low.  See, e.g., Avila v. Rubin, 84 F.3d 222, 226 (7th Cir. 1996) (observing that differentiating between the least sophisticated consumer and the unsophisticated consumer standards would involve the "splitting of split hairs.").  One judge in this district has observed:

> In order to be workable, the standard must presume *some* level of sophistication and intelligence on the part of the consumer.  At a minimum, the consumer must be capable of reading and interpreting a document that is written in plain English. Moreover, the consumer must be capable of understanding a document that contains certain types of information, some of which are legal concepts that are required to be included as a matter of law.

> ... because both the 'least sophisticated consumer' and the 'unsophisticated consumer' standards are objective standards, both necessarily incorporate the concept of reasonableness.

Sullivan, 2010 WL 4183801 at *4 (emphasis in original).  In accordance with this framework, the Court finds that the Letters do not violate Section 1692e(10) as a matter of law.

      a.    <u>The First Letter</u>

The caption of the First Letter informs the Plaintiff that the Account is undergoing legal review and that Resurgent is making a settlement offer.  Similarly, the First Letter informs the Plaintiff that Resurgent "has prescreened and reviewed your account to be forwarded to an Attorney's Office and our client has legal representation in Massachusetts."  (Exhibit A to Second Amended Complaint).  The record in this case shows that these statements are true. Resurgent had designated the Account as a "pre-legal" account, which meant that Resurgent intended to pursue the account through legal means if JCC did not reach a resolution with Plaintiff.  (Def. St. ¶ 3).  In addition, Resurgent had reviewed the Account as one to be forwarded to an attorney and had already retained counsel in Massachusetts.  (Def. St. ¶ 4).  The First Letter continues by making a settlement offer.  The letter advises the Plaintiff that settling

the Account will suspend it from being forwarded to an attorney.  Alternatively, if the Account

remained unsettled, Resurgent would forward the Account to an attorney for collection.

Plaintiff argues that the First Letter was false and deceptive because it conveyed the

message that he would have no opportunity to further resolve the claims against him short of

litigation unless he settled within 40 days of the date of the letter.  (Pl. Br. at 6-7).

Plaintiff's arguments go too far under the pertinent standard.  The Letters are not false

and, indeed, are neither misleading nor deceptive.  The First Letter did not state that the

settlement offer was a "one-time" offer or that it was "only" valid for forty days.  The First

Letter did not give the false impression that the offer would irrevocably lapse.  Indeed, the First

Letter leaves the possibility open that an alternative settlement arrangement could be made, even

after the 40-day period: "If you wish to make a payment proposal after that time, please call us to

discuss it."  (Exhibit A to Second Amended Complaint).   "Not only would 'the least

sophisticated debtor' understand that the expiration of a mere 'offer' does not necessarily

foreclose the possibility of the parties later agreeing to its terms, but '[t]he practical consequence

of holding [offer] letters unlawful would be to prohibit settlement offers that are anything but the

debt collector's best and final offer."  Johnson v. AMO Recoveries, 427 F. Supp. 2d 953, 957

(N.D. Cal. 2005); see also Gully v. Van Ru Credit Corp., 381 F. Supp. 2d 766, 772 (N.D. Ill.

2005) ("We conclude that a settlement offer that states the proposed discount and the length of

the offer, but does not expressly nor implicitly indicate that no other offer will be made, passes

muster even though future more favorable terms are likely."); Headen v. Asset Acceptance, LLC,

383 F. Supp. 2d 1097, 1101-02 (S.D. Ind. 2005) (granting motion to dismiss complaint and

holding that three successive offer letters  with expiration dates do not necessarily foreclose the

possibility of the parties later agreeing to settlement terms).  Accordingly, the Court finds that the First Letter does not violate Section 1692e(10) of the FDCPA.

      b.    <u>The Second Letter</u>

Similarly, the Second Letter is neither false nor deceptive.  The Second Letter is very similar to the First Letter and the Court's analysis is largely the same.  The caption informs the Plaintiff that the letter constitutes an offer of settlement.  The letter then makes a settlement offer on terms slightly more favorable that the First Letter and states that payment must be received within 30 days.  For the same reasons stated above, such statements are neither false nor deceptive under the FDCPA.

The only material difference between the First and Second Letter is that the Second Letter states that  "THIS ACCOUNT WILL BE FORWARDED TO AN ATTORNEY in Massachusetts if you do not contact us to resolve this account."  (Exhibit B to Second Amended Complaint).  The Second Letter told the Plaintiff that he had an unpaid debt and informed him that Resurgent would contact an attorney if the debt was not settled.  Resurgent did in fact forward the Account to an attorney in Massachusetts for further collection.  (Def. St. ¶ 15; Pl. St. ¶9).  As discussed above, simply because the Defendant made one more settlement offer to the Plaintiff (by way of the Third Letter) prior to sending the Account to the Daniels Law Office for collection, the Second Letter is not false or misleading.  Again, the Second Letter does not foreclose the possibility of settlement under different terms or after thirty days and invites the Plaintiff to contact the Defendant to discuss settlement even after the thirty-day period has passed.  Accordingly, this Court finds that, as a matter of law, the First and Second Letters do

not violate Section 1692e(10) of the FDCPA.[17]  See Headen, 383 F. Supp. 2d at 1105 (quoting

Gully v. Van Ru Credit Corp., 381 F. Supp. 2d 766, 773 (N.D. Ill. 2005) ("A deadline is not

meaningless simply because a debt collector makes a settlement offer at the same discounted rate

contained in the offer preceding the deadline.")).

       3.     Defendant's Letters Did Not Violate Section 1692g Of The FDCPA

Section 1692g of the FDCPA provides, in relevant part, that:

> Within five days after the initial communication with a consumer in connection
> with the collection of any debt, a debt collector shall, unless the following
> information is contained in the initial communication or the consumer has paid
> the debt, send the consumer a written [validation] notice containing ...
>
> (2) the name of the creditor to whom the debt is owed ...

15 U.S.C. § 1692g(a)(2).

Plaintiff alleges that Defendant violated Section 1692g of the FDCPA because its Letters

to Plaintiff failed to identify the creditor owning the debt.[18]  JCC's Letters stated the name of the

---

[17] Whether a collection letter violates the FDCPA is often a question of fact.  See, e.g.,
Walker v. Nat'l Recovery, Inc., 200 F.3d 500, 501 (7th Cir. 1999).  In clear cases, however,
courts have decided as a matter of law that collection letters were not deceptive or misleading.
See, e.g.,Wade v. Reg'l Credit Ass'n, 87 F.3d 1098 (9th Cir. 1996) (affirming grant of summary
judgment with respect to FDCPA claims); Headen, 383 F. Supp. 2d 1097 (granting motion to
dismiss); Pettit v. Retrieval Masters Creditors Bureau, Inc., 42 F. Supp. 2d 797 (N.D. Ill. 1999)
(granting summary judgment); Knowles v. Credit Bureau of Rochester, No. 91-cv-14S, 1992 WL
131107 (W.D.N.Y. May 28, 1992) (granting summary judgment); Woolfolk v. Van Ru Credit
Corp., 783 F. Supp. 724 (D. Conn. 1990) (granting summary judgment).  Here, the Court has
reviewed the Letters themselves and all of the material facts are undisputed.  Even viewing the
Letters in the light most favorable to the Plaintiff, this Court finds that the Letters are not
reasonably susceptible to a deceptive or misleading interpretation and they do not violate section
1692e(10) as a matter of law.

[18] Defendant's Letters provided the Plaintiff with all of the other information required by
Section 1692g, including the amount of the debt, the Plaintiff's ability to dispute the debt, and
the other information that the Plaintiff is entitled to receive.

original creditor as Sears and the name of the subsequent creditor as Resurgent, but not LVNV

Funding, the actual owner of the debt.[19]  (Pl. St. ¶ 4; Def. St. ¶ 19 and Exhibit J thereto).

Defendant argues that it was not required to give the name of the creditor who owned the debt

because another collector had already provided the Plaintiff with the required notice.  This Court

finds that the Defendant was not required to supply a second validation notice.

Federal courts have taken divergent positions on this issue.  While a close call, this Court

agrees with the numerous courts that have held that each debt collector attempting to collect a

debt need not send a separate validation notice.  See, e.g., Oppong v. First Union Mortg., 566 F.

Supp. 2d 395, 403-04 (E.D. Pa. 2008), aff'd, 326 Fed. Appx. 663 (3rd Cir. 2009); Goray v.

Unifund CCR Partners, No. 06-00214, 2007 WL 4260017, at * 8 (D. Haw. Dec. 4, 2007);

Nichols v. Byrd, 435 F. Supp. 2d 1101, 1106-07 (D. Nev. 2006); Senftle v. Landau, 390 F. Supp.

2d 463, 475 (D. Md. 2005); Weinstein v. Fink, No. 99 C 7222, 2001 WL 185194, at *7 (N.D. Ill.

2001).  But see Stair v. Thomas & Cook, 254 F.R.D. 191, 197 (D.N.J. 2008); Turner v.

Shenandoah Legal Group, P.C., No. 3:06CV045, 2006 WL 1685698, at *11 (E.D. Va. June 12,

2006); Sparkman v. Zwicker & Assocs., P.C., 374 F. Supp. 2d 293, 300-01 (E.D.N.Y. 2005);

Griswold v. J&R Anderson Bus. Servs., Inc., No. 82-1474-PA, 1983 U.S. Dist. LEXIS 20365, at

*3-4 (D. Or. Oct. 21, 1983).

In cases involving statutory interpretation, this Court must look first at the statute's plain

language.  Campbell v. Washington County Tech. College, 219 F.3d 3, 6 (1st Cir. 2000) (citing

---

[19] The Plaintiff has not alleged that JCC's misidentification of the current creditor constitutes a false or deceptive representation under Section 1692e(10) in his Second Amended Complaint.  At oral argument, Plaintiff confirmed that he is not alleging that JCC's misidentification of the current creditor is a violation of Section 1692e(10).

United States v. Meade, 175 F.3d 215, 219 (1st Cir. 1999)).  Absent ambiguity, the inquiry ends

with the text of the statute.  Id. (citing United States v. Charles George Trucking Co., 823 F.2d

685, 688 (1st Cir. 1987)).  Section 1692g explicitly refers in the singular to "the initial

communication."  Had Congress intended that there might be more than one initial

communication with a debtor on a given date, it could have provided that, such as by explicitly

requiring both initial and successive debt collectors to provide the validation notice.  In fact,

Congress made such distinctions in Section 1692e(11) when it distinguished between initial and

subsequent communications to a debtor on a given date.  See 15 U.S.C. § 1692e(11).[20]

Accordingly, the language of Section 1692g implies that one communication with proper

validation notice is all that is required for each debtor when contacted by the first debt collector,

no matter how long the line of debt collectors to follow.

      Such interpretation of the validation notice requirement is entirely consistent with its

goal: to advise the debtor of his rights and obligations.  See Oppong, 566 F. Supp. 2d at 404.

"Once the validation information is provided in the initial communication, and once the debtor is

made aware of his rights at the time the collection process begins, it would serve no purpose to

---

[20] Title 15 U.S.C. § 1692e(11) provides, in relevant part:

    The following conduct is a violation of this section:

    ***

    (11) The failure to disclose in the *initial written communication* with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose . . . and the failure to disclose in *subsequent communications* that the communication is from a debt collector . . .

Id. (emphasis added).

require that the same information be given again and again, each time the servicing function was

passed from one creditor to another." Id.  Accordingly, this Court finds that the Defendant was

not required to provide the Plaintiff its own validation notice and, therefore, Defendant did not

violate Section 1692g of the FDCPA.[21]

IV.     Chapter 93A Claims

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce . . ."  M.G.L. 93A, § 2(a).  Pursuant to

Chapter 93A, a business practice is unfair and deceptive if it can be found to be "immoral,

unethical, oppressive, or unscrupulous; or within the bounds of some statutory, common-law or

other established concept of unfairness."  Harrington, 508 F. Supp. 2d at 137 (quoting Ellis v.

Safety Ins. Co., 41 Mass. App. Ct. 630, 640 (1996)).

Violations of the FDCPA are per se violations of Chapter 93A.  Id. (quoting 940 C.M.R.

§ 3.16(4); Martin v. Sands, 62 F. Supp. 2d 196, 201 (D. Mass. 1999)).  However, the converse is

not true: an act that does not violate the FDCPA may still violate Chapter 93A.  Id. (citing

Schubach v. Household Finance Corp., 375 Mass. 133, 135-37 (1978)).

---

[21] Plaintiff has also brought a claim under the Massachusetts' counterpart to the FDCPA,
209 C.M.R. 18.18.  The analysis is the same.  The language of the Massachusetts regulation is
identical to that of Section 1692g.  While Massachusetts courts are not bound by federal court
interpretations of relevant federal statutes, Massachusetts courts often look to federal courts'
construction of federal statutes that mirror or are similar to state law for guidance.  See, e.g.,
Adams v. Coveney, 217 B.R. 362, 364 (D. Mass. 1998); Smith v. Mitre Corp., 949 F. Supp. 943,
946 (D. Mass. 1997) (citations omitted); see also Packaging Indus. Group v. Cheney, 380 Mass.
609, 611 (1980) (stating that where the state legislature enacts a statute following a federal
statute, state courts should follow adjudged construction of the federal statute by the federal
courts).  In the absence of Massachusetts caselaw construing 209 C.M.R. 18.18, this Court finds
that Massachusetts courts would interpret this regulation as not requiring validation notices by
subsequent debt collectors.

A successful claim under Chapter 93A requires a showing of (1) a deceptive act or practice on the part of the defendant; (2) an injury or loss suffered by the consumer, and (3) a causal connection between the defendant's deceptive act or practice and the consumer's injury. Casavant v. Norwegian Cruise Line, Ltd., 76 Mass. App. Ct. 73, 76 (2009) (citing G.L. c. 93A, § 9; Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 797 (2006)). "Chapter 93A liability is decided case-by-case and Massachusetts courts have consistently emphasized the 'fact-specific nature of the inquiry.'" Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (citation omitted). "Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law." Id. at 54 (quoting Ahern v. Scholz, 85 F.3d 774, 797 (1st Cir. 1996)).

A.       The Defendant's Letters Were Neither Unfair Nor Deceptive

As explained above, the Defendant's statements in the Letters regarding referral to an attorney were accurate. By settling the Account on the terms stated by the Letters, the Plaintiff could have avoided the forwarding of the Account to an attorney in Massachusetts. The Letters did not foreclose the possibility of settlement on different terms or within a different period of time and, in fact, stated that the Plaintiff could call the Defendant if he wished to make a payment proposal after the time stated by the Letters. The fact that the Defendant opted to provide the Plaintiff with additional time to settle the Account beyond the time set forth in the Letters does not render the Letters misleading or deceptive. Accordingly, this Court finds that the Defendant's Letters do not constitute unfair and deceptive acts or practices within the meaning of Chapter 93A.

-23-

B.      Plaintiff Cannot Establish That He Suffered An
        Injury Entitling Him To Recovery Under Chapter 93A

Even if the Plaintiff had proven that the Letters were unfair or deceptive, he has failed to

satisfy his burden of proof that he has suffered an injury entitling him to recovery under Chapter

93A.[22]  In order to establish a violation of Chapter 93A, a plaintiff must demonstrate that even a

per se violation caused an injury to him.  Hershenow, 445 Mass. at 798.

Most of the case law interpreting the injury requirement "has not been entirely lucid."

Gathuru v. Credit Control Servs., Inc., 623 F. Supp. 2d 113, 123 n. 18 (D. Mass. 2009) (Saylor,

J.).  Indeed, the First Circuit recently stated that "state-court precedent is still evolving."  Rule v.

Fort Dodge Animal Health, Inc., 607 F.3d 250, 251 (1st Cir. 2010). The Circuit Court continued:

"Although the statutory injury requirement has existed in its current form for more than twenty

years, the pertinent decisions by the Massachusetts Supreme Judicial Court leave it uncertain

whether and when something less than conventional economic injury will suffice under the

statute."  Id. (internal citations omitted).

Nevertheless, in Rule v. Fort Dodge Animal Health, Inc., 604 F. Supp. 2d 288 (D. Mass.

2009), aff'd, 607 F.3d 250 (1st Cir. 2010), Judge Woodlock thoroughly analyzed the applicable

caselaw on this issue.  In Rule, plaintiff alleged that she suffered injuries as a result of the

defendants' failure to warn her, and other putative class members, of the dangers associated with

heartworm medicine for dogs.  Id. at 290.  The lead plaintiff injected her dog with the heartworm

---

[22] Accordingly, if there is no injury, Plaintiff obviously cannot satisfy the causal
connection requirement.  Nevertheless, his arguments appear to conflate the two requirements.
See, e.g., Pl. Br. at 14 ("plaintiff was injured by defendant's two letters because their false ...
threats were sufficient 'to have caused a person to act differently from the way he [or she]
otherwise would have acted.'").

medicine twice, but the dog suffered no harm as a result of being injected with the product.  Id. at 291.  Despite having suffered no actual harm, the plaintiff alleged that she suffered an actionable injury because she and other consumers "might not have paid as much (or might not have paid anything) for the product if defendants had disclosed those risks."  Id. at 304.

The Court rejected the plaintiff's arguments.  After a careful and reasoned analysis of the relevant caselaw, the Court relied on state law that "'deception' and 'injury' are independently required elements of a Chapter 93A claim, and ... the invasion of a legal interest is not by itself sufficient to establish an 'injury.'"  Id. at 302 (citing Hershenow, 445 Mass. at 802).  Accordingly, the Court held that a plaintiff's speculative injury (i.e., that she might not have paid as much or might not have paid anything for the product if defendant disclosed its risks) did not constitute a compensable loss, economic or otherwise, allowing her to obtain relief under Chapter 93A.  Id. at 304.  The court therefore dismissed plaintiff's claims.  Id.

The First Circuit affirmed the District Court.  Rule v. Fort Dodge Animal Health, 607 F.3d 250 (1st Cir. 2010).  The First Circuit analyzed the relevant caselaw and noted that the SJC has moved away from cases such as Leardi v. Brown[23] that suggested that merely proving an unfair or deceptive act by the defendant directed at the consumer is sufficient to establish injury to that consumer.  Id. at 254.  The First Circuit concluded that "injury under chapter 93A means economic injury in the traditional sense . . ."  Id. at 255.

Here, while Plaintiff's relationship to the Defendant is more direct than that in Rule, Plaintiff does not allege that he suffered an actual injury as a result of Defendant's conduct.  Instead, Plaintiff alleges that JCC's actions invaded his legally protected interest and "were

---

[23] Leardi v. Brown, 394 Mass. 151 (1985).

sufficient 'to have caused a person to act differently from the way he or she would otherwise have acted' by - for example - causing a person to attempt settlement of the account sooner than he/she otherwise would have, or causing a person to contact defendant in the hope of avoiding or delaying legal action, which appeared imminent."  (Pl. Br. at 14) (internal citations omitted).  As the Rule court held, however, this type of speculative injury is not compensable under Chapter 93A.  Rule, 604 F. Supp. 2d at 304.  Plaintiff must prove both the invasion of a legally protected interest and an actual loss.  Id.; Rule, 607 F.3d at 255.  He has failed to do so in this case and, therefore, his Chapter 93A claim fails as a matter of law.

## CONCLUSION

Plaintiff's allegations in this case bear no remote connection to the abuse which the FDCPA sought to prevent.  Defendant is not alleged to have engaged in any of the forms of collection abuse targeted by the FDCPA, such as obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of Plaintiff's legal rights, disclosing the Plaintiff's personal affairs to others, obtaining information through false pretenses, or seeking to collect more than was legally owing.  The gravamen of Plaintiff's complaint is that the Defendant gave him more time to try to resolve his debt than what was stated in Defendant's Letters.  Under all of the circumstances, the Court cannot say that the Defendant's actions were misleading, deceptive or unfair.  Plaintiff's claims fail as a matter of law.

## ORDER AND RECOMMENDATION

For the reasons stated herein, this Court DENIES the Defendant's motion to strike paragraph 9 of the Plaintiff's affidavit in support of his motion for summary judgment.  The Court also recommends to the District Judge to whom this case is assigned that Plaintiff's motion

for summary judgment be DENIED, Defendant's motion for summary judgment be GRANTED, and that the District Court enter judgment in favor of the Defendant and against the Plaintiff on Counts III, V-VI, and VIII-X of the Second Amended Complaint and that the District Court dismiss the action with prejudice.

## REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge