UNITED SETATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN L. WATERS, on behalf of himself and all others similarly situated, Plaintiff | ) ) ) ) |
| v. | ) ) ) |
| J.C. CHRISTENSEN & ASSOCIATES, INC., Defendant | ) ) ) ) |

Civil No. 08-11795-NG

**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72, plaintiff John L. Waters, objects to the "Report and Recommendation" of Magistrate Judge Boal dated March 4, 2011, as set forth herein.

**Standard of Review**

With respect to objections raised to a report and recommendation of a magistrate judge to whom a summary judgment motion has been referred, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1). *See* Fed. R. Civ. P. 72(b)(3)("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). An objection is adequate provided that "it sufficiently 'direct[s] the reviewing court to the issues in controversy.'" *Kelly v. Cort Furniture,* 714 F.Supp.2d 120, 126 (D. Mass. 2010), quoting *Velez-Padro v. Thermo King de Puerto Rico, Inc.,* 465 F.3d 31, 32 (1st Cir. 2006). The Court may then "accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," and "may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. §636(b)(1).

## Objections

### I. THE MAGISTRATE JUDGE RULED INCORRECTLY THAT A GENUINE ISSUE OF FACT EXISTS AS TO WHETHER THE ALLEGED OBLIGATION WAS A CONSUMER DEBT.

The Magistrate Judge concluded that whether the subject debt was consumer in nature "is an issue of fact that cannot be decided in the context of cross-motions for summary judgment."  Report, p. 14.  This ruling was incorrect and should be rejected, since: (i) in its answer defendant admitted that the debt was consumer in nature; (ii) at its deposition defendant admitted that plaintiff was entitled to receive notices under the Fair Debt Collection Practices Act ("FDCPA"), which only applies to consumer debts; (iii) plaintiff attested in his affidavit that the debt resulted from "miscellaneous purchases for [his] personal use;" and (iv) plaintiff attested in his affidavit that he never owned or operated a business, so the debt could not have been commercial in nature.  Moreover, defendant did not submit any evidence rebutting plaintiff's affidavit, thus failing to meet its burden under Rule 56(e)(2) of "set[ting] out specific facts showing a genuine issue for trial."  Accordingly, this aspect of the Report was erroneous and the Court should rule that the debt was consumer in nature.[1]

---

[1] Plaintiff's deposition testimony does not alter this result.  First, contrary to the Magistrate Judge's finding, plaintiff did *not* testify that he did not recall the purchases made with the credit card.  His only testimony in that regard was in response to deposition questions regarding "the *sort* of purchases" he made.  *See* Report, pp. 10-11.  These were ambiguous questions which were timely objected to at the deposition, and therefore plaintiff's responses do not create a genuine issue of fact which otherwise does not exist.

## II. THE MAGISTRATE JUDGE RULED INCORRECTLY THAT DEFENDANT'S DUNNING LETTERS DID NOT VIOLATE THE FDCPA AND G.L. c. 93A AS A MATTER OF LAW.

### A. The First Letter (November 9, 2007)

The Magistrate Judge found that defendant's first letter did not violate the FDCPA or G.L. c. 93A because it was "true" and because it "did not give the false impression that the offer would irrevocably lapse." Report, pp. 16 – 17. These findings were contrary to well-reasoned decisions construing similar letters and was clearly incorrect

The first letter informed plaintiff that a "legal review" of his account had taken place, that the account had been "prescreened . . .to be forwarded to an Attorney's office," that the creditor "has legal representation in Massachusetts," and that settlement within the specified time period would "suspend forwarding this account to an Attorney." The clear import of this language was that *failure to settle* within the specified time frame would result in placement of defendant's account with an attorney, and plaintiff attested this was the message he took from the letter. That this language may have been true as to the consequences of *settling* the account does not change the fact that it was false – or at least deceptive – with respect to the consequences of *not* settling. As has often been recognized: "even if [a] notice is not false, it could be deceptive or misleading to the least sophisticated debtor." *Mushinsky v. Nelson, Watson & Assoc., LLC,* 642 F.Supp.2d 470, 473 (E.D.Pa. 2009). *See Sledge v. Sands,* 182 F.R.D. 255, 260 (N.D.Ill. 1998)("A literally true collection letter . . . can still convey a misleading impression."). The test is "whether the letter is misleading as a whole." *Gonzalez v. Kay,* 577 F.3d 600, 607 (5th Cir. 2009). Because defendant's letter was literally false or, at a minimum, misleading

3

as to the consequences of not settling, it violated the FDCPA and G.L. c. 93A as a matter of law.[2]

### B. The Second Letter (December 25, 2007)

Defendant's second letter stated that if plaintiff failed to contact defendant to resolve the account and did not send payment to arrive within 30 days, plaintiff's account "will be forwarded to an Attorney in Massachusetts." One reading of the letter, presumably true, is that if plaintiff contacted defendant and sent payment to arrive within 30 days, the account would not be forwarded to a Massachusetts attorney. A second reading of the letter – just as plausible, but false – was that if plaintiff did not contact defendant and make a timely payment the account would be forwarded to counsel. At a minimum the letter was misleading and deceptive as to the consequences of not settling within 30 days, and was therefore false and/or deceptive as a matter of law, violating both the FDCPA and G.L. c. 93A.

### III. THE MAGISTRATE JUDGE RULED INCORRECTLY THAT SECTION 1692g OF THE FDCPA DID NOT APPLY TO DEFENDANT.

The Magistrate Judge ruled that defendant was not required to send plaintiff a notice containing the information set forth in section 1692g(a) of the FDCPA (the "validation rights notice") because the "initial communication" regarding the debt had been sent by a prior collection agency, explaining that as used in §1692(a) the phrase "the initial communication" refers to only the first communication in the entire history of

---

[2] The Magistrate Judge noted the following statement as mitigating the effect of the letter's other language: "If you wish to make a payment proposal after that time, please call us to discuss it." However, this did not negate the threat of attorney placement, but only advised plaintiff that he might be able to settle directly with defendant after legal placement occurred. Again, the issue is not whether defendant's letter foreclosed the possibility of settlement after the specified time period, but only whether the letter conveyed that failure to settle by a certain date would essentially "up the ante" through legal placement.

4

collection efforts and not "the initial communication" from a particular collector.  This approach collides with the FTC's interpretation of §1692g(a) as well as defendant's testimonial admission at its deposition that plaintiff was in fact entitled to the notice. Moreover, the effect of the ruling is to render a fundamental protection of the FDCPA largely illusory, because no matter how many times a debt changes hands (in the present case, seven times prior to defendant's involvement), and no matter how much time passes between such transfers (in the present case, several years), the consumer would only be entitled to a single notification of the creditor's identity and the amount of the debt,[3] and but a single opportunity to dispute the debt and receive verification, and this only at the outset of the entire process.[4]

## IV. THE MAGISTRATE JUDGE RULED INCORRECTLY THAT PLAINTIFF WAS NOT INJURED WITHIN THE MEANING OF G.L. c. 93A, §9, AS A RESULT OF DEFENDANT'S LETTERS; AT A MINIMUM, THE ISSUE SHOULD BE CERTIFIED TO THE SJC FOR RESOLUTION.

Relying solely on a First Circuit decision involving a manufacturer's failure to warn of potential harm from dog heartworm medicine,[5] the Magistrate Judge concluded that defendant's letters could not cause an injury within the meaning of G.L. c. 93A, §9 as a matter of law.  This view was far too narrow, leading to an incorrect result, as shown by Judge Saylor's analysis of a far more comparable fact pattern in *Gathuru v. Credit Control Services, Inc.,* 623 F. Supp. 2d 113 (D. Mass. 2009).   Under the *Gathuru*

---

[3] No other provision of the FDCPA requires such disclosure.  For example, section 1692e(2) provides that a communication which discloses the creditor's identity must do so accurately, but does not require the disclosure *per se.*

[4] The validation rights notice of §1692g(a) is considered so vital that it is required even if the "initial communication" does not occur until after judgment on the debt has been rendered.  *Frey v. Gangwish,* 970 F.2d 1516, 1518-1519 (6th Cir. 1992).

[5] *Rule v. Fort Dodge Animal Health Inc.,* 607 F.3d 250 (1st Cir. 2010).

5

approach, there is little doubt that defendant's letters "would be likely to have some kind of negative impact on the recipient, particularly in terms of assertion of legal rights or financial decision-making," thus resulting in an actionable injury. *Id.,* at 124.

In addition, the federal courts must be wary of construing issues of state law which may be income determinative and where there is no controlling precedent unless "the course the state court would take is reasonably clear." *Nieves v. Univ. of Puerto Rico,* 7 F.3d 170-274-275 91st Cir. 1993). Since there is but a single reported decision construing chapter 93A's injury requirement in the debt collection context – *Gathuru* - and that decision is a federal trial court decision, at oral argument plaintiff's counsel suggested that the Magistrate Judge consider certifying the issue to the Massachusetts Supreme Judicial Court.[6] Plaintiff reiterates that suggestion here.

## Conclusion
## (and comments on the Report's conclusion)

For the above reasons, the Court should reject the Magistrate Judge's findings and recommendation, allow plaintiff's motion for partial summary judgment, and deny defendant's cross-motion for summary judgment. Before closing, however, plaintiff believes it appropriate to address two of the Magistrate Judge's statements in the conclusion of her Report:

1. The Magistrate Judge stated that '[d]efendant is not alleged to have engaged in any of the forms of collection abuse targeted by the FDCPA," then went on to list some

---

[6] SJC Rule 1:03 reads in pertinent part:

> This court may answer questions of law certified to it by . . . a United States
> District Court . . . when requested by the certifying court if there are involved
> in any proceeding before it questions of the law of this state which may be
> determinative of the cause then pending in the certifying court and as to which
> it appears to the certifying court there is no controlling precedent in the decisions
> of this court.

examples of obvious and egregious collection misconduct. Report, p. 26. Respectfully, this characterization of the FDCPA as only covering glaring or truly abusive misconduct is far too narrow and has no basis in the history or text of the statute. In enacting the FDCPA, "Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute." *Frey,* 970 F.2d at 1521. Thus, in addition to prohibiting obvious misconduct such as "[use of] obscene or profane language" and "threats of violence" (Report. P. 26), the FDCPA also renders unlawful a wide variety of actions which are not likely to cause actual or tangible harm, such as not disclosing that the collector is attempting to collect a debt (§1692e)(11)), misrepresenting the name of the collector (§1692e(14)), and communicating with the consumer by post card (§1692f(7)). That defendant's conduct may be closer to these kinds of violations than those listed by the Magistrate Judge should not be relevant to the question of whether a violation has occurred.

2. The Magistrate Judge stated "[t]he gravamen of Plaintiff's complaint is that the Defendant gave him more time to try to resolve his debt than what was stated in Defendant's Letters." Report, p. 26. As should be clear, however, this is not the plaintiff's grievance at all, but rather that defendant materially misrepresented the consequences of not resolving the debt, or at least gave materially misleading information as to those consequences, such that within the 40-day period specified in the first letter and within the 30-day period specified in the second letter plaintiff's ability to evaluate his options and make an informed decision was compromised. As has been recognized, "[this] is exactly what Congress intended to prevent when it enacted the FDCPA."

7

*Almodovar v. P.V. Collection Services, Inc. (In re Almodovar),* 2011 WL 381742 *2

(Feb. 3, 2011).

                                    Respectfully submitted:

                                    JOHN L. WATERS, plaintiff,
                                    By his attorney:

                                    */s/Kenneth D. Quat*
                                    BBO #408640
                                    QUAT LAW OFFICES
                                    678 Massachusetts Avenue, Suite 702
                                    Cambridge MA 02139
                                    617-492-0522
                                    kquat@quatlaw.com

## Certificate of Service

       I hereby certify that on March 18, 2010, I served the foregoing document on all registered ECF users via the Court's ECF system, and on any non-registered parties via first class mail, postage prepaid.

                                    */s/Kenneth D. Quat*